Lynd v. Menzies et al.

---

WILLIAM J. LYND v. GEORGE MENZIES, JOHN H. SUYDAM AND OTHERS.

1.  A minister of the Protestant Episcopal Church has either the possession of the church edifice, or a right, in the nature of an easement, to enter therein, on all occasions set apart in the parish for divine services and a substantial interference with such right will lay the ground for an action at law.
2.  The English ecclesiastical law forms the basis of the law regulating the affairs of this denomination of Christians.
3.  In order to vest the pastor with the ordinary rights in the temporalities pertaining to his office, it is not necessary for the congregation to be incorporated ; nor that the title to the church should be lodged in such congregation.
4.  A Protestant Episcopal minister was barred out of the church building, on a Sunday, by his wardens and vestrymen ; *held*, that a verdict for substantial damages for such act, in a suit by the minister, should not be disturbed.

Lynd v. Menzies et al.

This was an action on the case for forcibly preventing a minister from preaching in the church, and occupying the parochial school house. Upon the trial, the following facts were elicited. By a deed, dated 1st October, 1853, Cyrus Peck and wife conveyed the lot upon which the church and school house are now erected, to the rectors, wardens, and vestrymen of the church of St. Barnabas, Roseville, in the city of Newark, in fee, upon the condition that a church and school house should be erected thereon, and which church edifice should be consecrated, appropriated, and devoted, for ever exclusively to the service of Almighty God, according to the doctrine, discipline, and worship of the Protestant Episcopal Church in the United States of America. At the time of this conveyance the said church was not incorporated, and did not become so until after the expulsion of the minister as hereafter stated. On the 23d July, 1855, this church was consecrated, by the bishop of the diocese of New Jersey, and from that time forward the congregation continued its organization. In December, 1861, the plaintiff accepted a call to the rectorship of this church, and in the month of June, 1862, was duly instituted. It appeared that the plaintiff, in common with the other officers of the church, supposed the church had been incorporated, and that various corporate acts were performed. Before his call, the church had claimed and been conceded ecclesiastical rights which pertained to incorporated churches only. After the call of the plaintiff, a school house was put up on the church lot, and he was placed in possession. On the 27th April, 1867, the plaintiff received a note from two of the defendants, who were the wardens of the church, notifying him that on Easter day, which was then passed, his connection as rector of the church had ceased. On the next day, which was Sunday, when the plaintiff went to the church to officiate, he found the church closed, the doors being fastened so as to prevent his entering. In a few days afterwards he was in a similar manner excluded from the school house. It was proved that such expulsions were the acts of the defend-

ants, two of whom were wardens, and the others vestrymen of the church.

The question of law as to the right of the plaintiff to recover was reserved, and the matter of damages submitted to the jury, who returned a verdict for one thousand dollars.

The case came before this court on a motion for a new trial.

For plaintiff, *C. Parker* and *C. Borcherling, Jr.*

For defendants, *J. P. Bradley.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.    The motion for a new trial in this case is rested on two grounds, viz., first, that the proofs will not sustain an action at law ; second, that the damages are excessive.

On the first of these heads the ground taken is, that at the time when the plaintiff became the rector of this congregation, and also at the time of the transaction complained of, the congregation was not incorporated.    From this fact it was urged that the title under the deed from Mr. Peck could not pass out of him for the want of a competent grantee to take it, and that the members of the congregation were in possession of these premises as tenants in common by sufferance, and that, consequently, such rights in the realty as ordinarily pass to the rector under a regular organization did not, in the present case, vest.

So far as the law has to do with the relationship of the rector with his flock, such relationship is to be regarded as the effect of a contract.    What, then, is the agreement into which a congregation of this denomination of Christians enters upon the call of a rector ?    So far as touches the matter in controversy, it plainly appears to be this : they offer to the minister receiving the call such rights in their temporalities as, by the ecclesiastical law of their sect, belong to the office which is tendered, one of such rights being that of preach-

ing on Sundays in the church provided by the congregation. Such an offer, therefore, can have nothing to do with the title to the church edifice. No matter in whom the title may reside, if the congregation has the use of the building, the rector must, of necessity, have the right to partake in such use. The agreement is not, as the argument on the part of the defendants assumed, that the rector is to possess this class of privileges in those temporalities of which the congregation is the absolute owner. But, to the contrary, whatever place the congregation provide for the purpose of public worship in the parish, into such place the rector, by virtue of his office, has the right to enter in order to conduct such worship. I have failed, therefore, to perceive how the fact of title to the church premises in question is to affect the legal result in this case. In the view which I take of the understanding between these parties, it cannot matter at all whether or not the congregation had any interest in these premises other than a right to the occupation of them for the purpose of divine service on the Sunday of the expulsion; because if, on that occasion, this building was the place set apart by the congregation for their religious exercises, then it necessarily follows at that time, that the plaintiff, *virtute officii,* had the legal right to be present and to conduct the worship. But the case, in reality, is much stronger in favor of the plaintiff than this. This church property was put into the possession of this congregation for their denominational uses by Mr. Peck, the owner of the fee; they had erected their church upon it, and thus complied with the conditions of the grant; it is true the title at law was defective, but it is also true, that their title in equity was complete. This church, thus built, had been consecrated by the bishop of the diocese, and, by institution, performed with all due ecclesiastical formalities, the plaintiff had been placed in charge of the spiritual affairs of the church. The congregation remained in full possession of the church edifice, and neither Mr. Peck, nor any one else, called such possession in question. Under these circumstances, how is

it possible that these defendants, who claim to be the representatives of the congregation, can deny the rights of the rector as to these premises, on the ground of the infirmity of their own title? Suppose we regard them as mere tenants at sufferance, will that fact enable them to put an end to the rights of the plaintiff in this property? If such were their position, the only effect would be to make both their own rights and those of the rector dependent on the will of the owner of the land. But it certainly would be contrary to all principle, to permit a party in possession of real property to grant an interest in it to another, and then defeat such interest, on the ground of his own inability to make such grant. The rule that a party cannot derogate from his own grant, is one of universal efficacy, and applies, in a very direct manner, to the present case. Nor is there anything in the suggestion that the usual rights touching the temporalities, which vest in the rector, could not be obtained by him in the present instance, on account of the imperfection of the ecclesiastical organization of this congregation. The imperfection relied on was the absence of an incorporation. But the want of this quality does not at all affect the rights and duties of pastor and people towards each other. The effect of becoming incorporated is to facilitate the acquisition and transfer of property, and to enable the congregation to be represented in the convention of the diocese. *Article V. of Constitution of P. E. C. of Dio. of New Jersey.* But by the canonical law of this denomination of Christians, it is not necessary, in order to constitute a church, that the congregation should take the form of an incorporated body. Indeed, the very law of this state which provides for the incorporation of this class of churches, presupposes and requires that there shall be, antecedent to the inception of proceedings, "a congregation of the Protestant Episcopal Church in this state, duly organized according to the constitution and usages of said church." *Act of* 1829. In the case now before us, it plainly appears that this church was constituted in conformity to the ecclesiastical law and usages

applicable to it, and the consequence is, that the plaintiff, by his official connection with it acquired all the customary powers and privileges pertaining to the rectorship.

But there was a second objection taken on the argument, which was, that on the assumption of the existence of the right of the rector to the privileges claimed by him, still, it was said an invasion or disturbance of such rights would not constitute the ground of a suit at law.

I cannot yield my assent to this proposition. The nature of the right in question forbids such a result. I think it is clear that, in right of his office, a rector, by force of the law of this church, has either the possession of the church edifice, or has a privilege which enables him to enter into it—such privilege being in the nature of an easement. Mr. Murray Hoffman, in his learned and interesting treatise on the law of the Protestant Episcopal Church in the United States, page 266, in remarking on the effect of the incorporation of churches, states his views in these terms, viz. : "The title then to the church, and all church property, is in the trustees, collectively, for all corporate purposes ; but there is another class of purposes purely ecclesiastical, as to which the statute did not mean to interfere or prescribe any rule. These are to be controlled by the law of the church." And the conclusion to which he comes is thus stated : "That the control and possession of the church edifice upon Sundays, and at all times when open for divine services, appertains exclusively to the rector." I have no doubt with regard to the correctness of this view. By the English ecclesiastical law, which, although somewhat modified by new circumstances, and by American usages and statutes, constitutes the substantial basis of the law controlling the affairs of this particular church, the possession of the church and churchyard is in the incumbent. Nor does it make any difference in this respect in whose hands the title to the religious property is lodged, as for example, in case the freehold to the church and churchyard is in the rector, nevertheless, the curate will be deemed in possession for all ecclesiastical

purposes. In exemplification of this rule, I refer to an interesting discussion of the question in *Greenslade* v. *Darby*, decided during the present year, by the Court of Queen's Bench. *L. R.* 3; *Q. B.* 421. " I quite agree with the former decisions," such is the declaration of Chief Justice Cockburn, " that an incumbent has possession of the churchyard, as well as of the church for all spiritual purposes; therefore, for burials and for all purposes attached to his office he has undoubtedly uncontrolled possession of the churchyard" To the same purpose is the rule laid down by Cripps in his treatise on the *Church and Clergy*, *p.* 158; see also, 1 *Burns' Ecc. Law* 377; *Stocks* v. *Booth*, 1 *T. R.* 428. If then we adopt this theory, and I perceive no reason for rejecting it, that for the purposes of the exercise of his sacerdotal functions, the rector becomes possessed of the church buildings and grounds, it will be difficult to devise any pretext in denial of the right of such officer to a civil remedy if such possession be invaded. Nor does the right to redress for an interference with his rights seem less clear if we adopt the hypothesis that, by force of his position, the plaintiff was possessed of an easement in these premises. Such a privilege would not be unlike, in kind, to a right to the occupation of a pew in a church, and of this latter right, in the case of *The Presbyterian Church* v. *Andruss*, 1 *Zab.* 328, Chief Justice Green remarks : " It is an incorporeal hereditament. It is in the nature of an easement, a right or privilege in the lands of another. For an interruption of this right, an action on the case for a disturbance, as in other cases of injury to incorporeal hereditaments, is the only remedy." Regarding then the rector's interest in the church edifice as a mere right to enter, and while there to discharge certain functions, I am unable to distinguish it, in its substantial essence, from the right of the pew-holder. The right of the latter is, obviously, no more secular in its character than the former; both the pew-holder and the minister attend to the end of religious worship and edification; and as the pew-holder has a remedy at law for a disturbance of his privilege, it would

Lynd v. Menzies et al.

seem to be preposterous to deny it to a minister for a like wrong. Upon principle then, I think the present action is to be vindicated, and for a precedent I refer to the case of *Phillybrown* v. *Reyland*, 8 *Mod.* 52, 352 ; 2 *Stran.* 624, in which it was decided that an action would lie in behalf of a parishioner against the clerk of the vestry for shutting the vestry door and keeping the plaintiff out, so that he could not come in to vote. The rule of decision in this case appears to be indistinguishable from that which is called for by the one now before us.

Adopting, therefore, either of the views above indicated, viz., that the plaintiff was in possession, or that he had a right to enter on special occasions, the interference with either of such interests affords a right of suit. The mere fact that the form of action would be variant if we adopt one or the other theory, cannot affect this case, on the present motion, as the real question in controversy between the parties has been tried, and, consequently, by force of the provision of our present practice act, the mode of suit is now alterable so as to conform to the legal view, which the court may adopt.

Influenced by these considerations, I have concluded that the plaintiff's right of action is sustained by the proofs in the case.

On the second head my judgment is, also, in favor of the plaintiff. The damages are undoubtedly large, but this question was left fairly to the jury, and there is no reason to suppose that they were, in any respect, subjected to any sinister influence. The defendants acted with great indiscretion ; their conduct was oppressive, and, whatever their intentions may have been, it was calculated to wound and injure the plaintiff. The verdict should not be disturbed.

Rule discharged.